## PACIFIC MAIL STEAMSHIP COMPANY *vs.* THE PACIFIC.

### March 12, 1906.

*Act of Navigation—Basis for proceedings in rem:* An ocean-going steam dredge engaged in dredging a harbor, being about to proceed to another place in such harbor, slipped a wire cable by which it was moored to the cable of a harbor buoy, letting it fall to the bottom of the harbor, which cable was used by it as a means of shifting its position in such dredg-

ing operations. *Held,* under a libel *in rem* for damage arising from the fouling of the propeller of the libelant's steamship with such cable, that the act of slipping such cable was an act of navigation of the dredge, and was ground for a libel *in rem.*

*Verification by an agent:* Verification by an agent in the absence of libelant, such absence being shown, is sufficient. Rule of Court No. 38.

*Same—Authority of officer of corporation:* Authority of officer of corporation to act for his corporation in the verification of a libel by such corporation acting as agent for libelant, must be shown.

*In Admiralty*: Exceptions to libel *in rem.*

*Kinney, McClanahan & Cooper,* Proctors for Libelant.
*E. M. Watson* and *Holmes & Stanley,* Proctors for Libellee.

DOLE, J. This is a libel *in rem* for tort, in which it is alleged in brief that the libelant's steamship on leaving the port of Honolulu and maneuvering to reach a proper course for leaving such port, fouled a wire cable and anchor chain lying on or near the bottom of the harbor with her starboard propeller, causing serious delay and damage to such vessel; and that such cable was the property of the libellee which is an ocean-going steam dredge engaged in dredging the harbor of Honolulu and was used by it in connection with such dredging operations, being fastened to the chain of a government buoy on the opposite side of the harbor from where the libellee had been operating, and was a means by which the position of the dredge was shifted from one point to another; and that the said dredge, for the sake of moving its position to another locality, cast off such wire cable and allowed it to drop to the bottom of the harbor and left it there, and that it was in such position as left by the dredge when the libelant's steamship fouled the same.

The North American Dredging Company intervened for its interests in the said dredge, claiming to be the owner thereof, and filed exceptions to the libel, the first ground thereof being that the allegations of the libel do not disclose any admiralty or maritime lien upon the said dredge whereupon an attachment should be founded.

In support of this position the intervenor cited the case of *Currie v. McKnight,* H. L. App. Cas. (1897), 97, in which case it appeared that the ship of the libellee, the Dunlossit, was lying alongside of another vessel at a certain pier; that there was a heavy gale blowing and the master of the Dunlossit wishing to go to sea and being unable to induce the master of the other vessel to let go his moorings which were in his way, cut them himself and sent her adrift so that she went ashore and was damaged, and her owners brought proceedings to maintain a maritime lien against the Dunlossit for the damage done resulting from the act of the master of the Dunlossit. The court ruled "that the damage in respect of which a maritime lien is admitted must be either the direct result or the natural consequence of a wrongful act or maneuver of the ship to which it attaches. Such an act or maneuver is necessarily due to the want of skill or negligence of the persons by whom the vessel is navigated; but it is, in the language of maritime law, attributed to the ship because the ship in their negligent or unskilful hands is the instrument which causes the damage." And that consequently the injuries sustained by the libelant's ship were not owing to any movement of the Dunlossit but were occasioned by an act of the Dunlossit's crew not done in the course of her navigation but for the purpose of removing an obstacle which prevented her from starting on the voyage, and therefore, that there was no lien. The case of *The Ida,* 1 Lush. (Adm. Rep.) 6, 9, was also cited on the same point, the authority of which case is to the same effect.

In the case before the court there is, I think, a difference in the circumstances which removes it from the precedents of the cases referred to, in that the dredge in the course of its operations in the harbor of Honolulu and as a part of such operations, being about to move to another part of the harbor, cast off the wire cable by which it was moored or attached to the anchor chain of the buoy referred to. In other words, its master, wishing to go to another place, instead of detaching this wire cable from the anchor chain of the buoy to which it was fastened and haul-

· ing it aboard, slipped such wire cable and proceeded to its new locality. The act of slipping this cable was, it appears to me, an act of the ship performed in its maneuvering for another place and may be spoken of as an act of navigation, affording a basis for a libel *in rem*.

The case of the *Inland & Seaboard Coasting Co. v. The Commodore,* 40 Fed. Rep. 258, was cited by counsel for the intervenor and supports this view, although in that case the point did not appear to have been discussed. In that case a dredge had left an anchor, used in mooring it, at the bottom of the harbor and another vessel had fouled with it and had thereby received damage. The court said, "The tort was the tort of the dredge; the negligence which caused the tort was the negligence of the dredge."

This ground of the exceptions is therefore overruled.

The second ground of the exceptions is that "it does not appear from the said libel that the agents who attempt to verify the same for and on behalf of the libelant    *    *    *    a California corporation, have authority to do so."

Rule 38 of the rules of this court provides that "verification shall be made by the party or by one of the parties, or in his or their absence by the agent, attorney in fact or proctor acquainted with the facts. When the verification is not made by a party, the affiant's means of knowledge or information in such case and the reason why the verification is not made by a party, shall be stated." The libel is signed " Pacific Mail Steamship Company by H. Hackfeld & Company, L't'd., its agent. By (signature) F. W. Klebahn, Secretary." The libel is verified by Frederick W. Klebahn, who states in his oath of verification that he is the Secretary of H. Hackfeld & Co., L't'd., the agent of the libelant, and that as such Secretary he makes the affidavit for the libelant; that libelant's nearest place of business is more than 100 miles from the Territory of Hawaii and that it has no officer nearer to the jurisdiction of this court than the State of California, and that H. Hackfeld & Co., L't'd., is the only agent of the libelant within the Territory of Hawaii,

and that he makes this verification from personal knowledge as well as from information received from the captain, officers, crew and servants of the libelant's ship Siberia.

Under the rule of court and this affidavit, the verification is sufficient if the Secretary of H. Hackfeld & Co., L't'd., is authorized so to act for his company. There is nothing to show this authority. It should have been stated in the affidavit or otherwise. Counsel for libelant contend that the usual forms for such verifications do not contain allegations as to authority and cite No. 620 of Desty's Forms, which is a verification by attorney and therefore does not apply to the case of a verification by an officer of an agent corporation. Form No. 102 in Benedict's Admiralty, for a jurat by libelant's proctor, contains the statement that deponent is authorized to act for libelant in the matter. They also contend that an objection to the verification cannot be raised on exceptions. I find in Form No. 181 of Desty's Forms, a form for exceptions to a libel in admiralty, the objection that the libel "is not verified as required by the rules and practice of this court."

Under these considerations the second ground of the exceptions is allowed, and a showing of the authority of the Secretary of H. Hackfeld & Co., L't'd., to act for the agent corporation must be made.

The third ground of exceptions, to wit, that "the damages to the amount of $30,000 claimed in and by the said libel, are stated so indefinitely that the allegations thereof cannot be answered to," is overruled, such allegations appearing to the court to be sufficient.